**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STUART E. HERSH, | Civil Action No.: 12-mc-153 |
| Plaintiff / Judgment-Creditor, | |
| -against- | |
| ISLAMIC REPUBLIC OF IRAN, | |
| Defendant / Judgment-Debtor | |
| -and- | |
| WARWICK NEW YORK HOTEL, | |
| Garnishee. | |

# <u>ORDER TO SHOW CAUSE</u>

**UPON** the attached memorandum of law and declaration of Andrew Schlesinger, General Manager of Warwick New York Hotel,

**IT IS ORDERED** that Petitioner/Plaintiff/Judgment-Creditor, Stuart E. Hersh ("Hersh"), show cause before this Court, before the Hon. _____, U.S.D.J., on **September** _____, **2012,** at _____ a.m./p.m. as to why an order should not be entered to quash, dissolve, and nullify a restraining notice directed to Warwick New York Hotel, dated September 13, 2012, and granting any further relief that this Court deems just and proper; and it is

**ORDERED** that Warwick may treat the restraining notice as a nullity unless the Court directs otherwise; and it is

**ORDERED** that Hersh is temporarily restrained and enjoined from serving upon Warwick any papers purporting to attach or levy upon any property in the possession of Warwick; and it is

**ORDERED** that opposition papers to this motion, if any, shall be filed and served so as to be received by the Court and Andrew I. Hamelsky, White and Williams LLP, 250 W. 34th Street, Suite 4110, New York, NY 10119, on or before **September _____, 2012**; and

**LET SERVICE** of a copy of this Order and the papers on which it is based, by overnight mail, on or before **September _____, 2012**, be deemed sufficient service upon the following:

> Robert J. Tolchin
> Meir Katz
> The Berkman Law Office, LLC
> 111 Livingston Street, Suite 1928
> Brooklyn, New York 11201
> (Phone 718-855-3627)
> *(Attorneys for Petitioner/Plaintiff/Judgment-Creditor, Stuart E. Hersh)*

Dated:

SO ORDERED   _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STUART E. HERSH,

                  Plaintiff / Judgment-
                  Creditor,

    -against-

ISLAMIC REPUBLIC OF IRAN,

                  Defendant / Judgment-
                  Debtor

    -and-

WARWICK NEW YORK HOTEL,

                  Garnishee.

Civil Action No.: 12-mc-153

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH, DISSOLVE, AND NULLIFY RESTRAINING NOTICE

White and Williams LLP
One Penn Plaza
250 W. 34th Street, Suite 4110
New York, NY 10119
Phone: 212-244-9500
*Attorneys for Garnishee, Warwick New York Hotel*

*On the brief*
Andrew I. Hamelsky, Esq.

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

Preliminary Statement ........................................................................................................ 1

Statement of Facts .............................................................................................................. 2

Argument ............................................................................................................................ 3

Point I:  Pursuant to New York Law, The Restraining Notice Must Be Dissolved and
Nullified Because Warwick Does Not Owe A Debt To Iran and Is Not In Possession of
Iran's Property.................................................................................................................... 3

Point II: The Hotel Reservation Is Not A "Blocked Asset".............................................. 5

Point III: Property of Foreign States Are Immune From Attachment and Execution ............... 6

Point IV: The Executive Orders Cited In The Restraining Notice Are Inapplicable................. 8

Point V: There Does Not Appear to Be Subject Matter Jurisdiction ........................................ 9

Conclusion .......................................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bank of NY v. Rubin,*
  484 F.3d 149 (2d Cir. 2007)...................................................................... 6, 7

*Knox v. Orascom Telecom Holding S.A.E.,*
  477 F. Supp. 2d 642 (S.D.N.Y. 2007)........................................................ 10

*Nielsen Media Research, Inc. v. Carlton Hotel, LLC,*
  5 A.D.3d 139, 774 N.Y.S.2d 8 (1st Dep't 2004) ........................................ 4

*Rubin v. The Islamic Republic of Iran,*
  637 F.3d 783 (7th Cir. 2011)........................................................................ 7

*Verizon New England Inc. v. IDT Domestic Telecom, Inc.,*
  ____ N.Y.S.2d ____, 2012 WL 3792111 (1st Dep't Sept. 4, 2012)........................................ 5

STATUTES AND COURT RULES

28 U.S.C. §1609 ....................................................................................... 1, 7

28 U.S.C. § 1610(g) ....................................................................................... 7

50 U.S.C. 1701 ............................................................................................... 6

50 U.S.C.A. § 1702(b)(4)............................................................................ 6, 9

CPLR 105(i) .................................................................................................... 4

CPLR 5201 ................................................................................................. 1, 5

CPLR 5222 ................................................................................................. 1, 3

CPLR 5240 ................................................................................................... 10

Article 52 of the CPLR .................................................................................. 4

Executive Order 12947 ............................................................................... 2, 8

Executive Order 13224 ............................................................................... 2, 9

Rule 69(a) of the Federal Rules of Civil Procedure...................................... 3

Foreign Sovereign Immunites Act of 1976 .................................................... 1

Foreign Sovereign Immunities Act of 1976 ................................................................ 2

Pub. L. No. 107–297, 116 Stat 2322 ......................................................................... 6

Trading With the Enemy Act (50 U.S.C. App. 5(b)) ................................................... 6

## PRELIMINARY STATEMENT

At the request of the United Nations, the Islamic Republic of Iran ("Iran") is sending a delegation to participate in meetings at the United Nations.  In connection with their diplomatic delegations to the United Nations, they sought lodging at the Warwick New York Hotel ("Warwick").  Warwick does not have property belonging to Iran, nor does Warwick owe a debt to Iran.  Warwick is providing lodging and related services concerning Iran's diplomatic mission to the United Nations.  No property of Iran that can be attached is in possession or custody of Warwick, and, accordingly, the restraining notice directed to Warwick by Petitioner/Plaintiff/Judgment-Creditor, Stuart E. Hersh ("Hersh"), dated September 13, 2012, must be quashed.

The restraining notice must be quashed, dissolved, and nullified as it is defective on its face for the following reasons:

- New York CPLR 5222(b) requires that for the restraining notice to be effective, at the time of service, Warwick owe a debt to Iran or be in custody of Iran's property.  Neither of these two requirements are met.

- A hotel room reservation is not property under CPLR 5201.

- A hotel reservation is not a "blocked asset" under § 201(a) of the Terrorism Risk Act.

- Property of a foreign state is immune from attachment and execution under 28 U.S.C. §1609, which is part of the Foreign Sovereign Immunities Act of 1976.

1

- Executive Order 12947 and Executive Order 13224 contain an exception precluding the authority to regulate or prohibit, directly or indirectly, any transactions ordinarily incident to travel to or from any county, including payment of living expenses and acquisition of goods or services for personal use and arrangement of facilitation of such travel.

The Iranian delegation is set to arrive in New York with the understanding of the United States government, as the United States Secret Service, the State Department and the New York Police Department are providing protection for the Iranian delegation. They are arriving in New York on Saturday, September 22, 2012 and therefore it is respectfully requested that this Court quash Hersh's restraining notice immediately.

## STATEMENT OF FACTS

It is understood that the United Nations has requested that the President of Iran and his delegation attend certain United Nations functions. (*See* Declaration of Andrew Schlesinger.) The restraining notice does not deny the fact that the United Nations has requested the appearance of the Iranian delegation to New York. As such, pursuant to the Vienna Convention on Diplomatic Delegations as well as Foreign Sovereign Immunities Act of 1976, diplomatic immunity attaches to the Iranian delegation.

At the request of the Iranian delegation, Warwick has agreed to provide rooms in connection with their diplomatic business at the United Nations during the week of September 22 to 29, 2012. (*See* Declaration of Andrew Schlesinger.) The Warwick is a New York corporation that has no affiliation whatsoever with Iran. (*See id.*) Further, at no time does the Warwick hold any assets or property of Iran. The arrangement between

2

Warwick and the Iranian diplomats is simply that of a hotelier.  That is, the Iranian

delegation has made reservations at the Warwick and has agreed to pay for services

appurtenant to their stay at the hotel.  Warwick does not owe any money to Iran and has no

assets of Iran.

As will be discussed further, the restraining notice issued by Hersh to Warwick has

no basis under the law and therefore must be quashed.

## ARGUMENT

## POINT I

## PURSUANT TO NEW YORK LAW, THE RESTRAINING NOTICE MUST BE DISSOLVED AND NULLIFIED BECAUSE WARWICK DOES NOT OWE A DEBT TO IRAN AND IS NOT IN POSSESSION OF IRAN'S PROPERTY

Rule 69(a) of the Federal Rules of Civil Procedure makes state procedure

applicable to the procedure for execution of a judgment.  The restraining notice purports to

restrain Warwick pursuant to New York CPLR 5222.  The notice must be dissolved and

nullified for several related reasons under the state procedure.

First, the restraining notice is ineffective because Warwick, at the time of service of

the restraining notice, did not owe a debt to Iran and was not in possession of Iran's

property.  In relevant part, CPLR 5222(b) provides:

> A restraining notice served upon a person other than the judgment
> debtor or obligor is effective only if, *at the time of service*, he or
> she *owes a debt to the judgment debtor* or obligor or he or she is in
> the *possession or custody of property in which he or she knows or
> has reason to believe the judgment debtor or obligor has an
> interest*, or if the judgment creditor or support collection unit has
> stated in the notice that a *specified debt is owed by the person
> served to the judgment debtor or obligor or that the judgment
> debtor or obligor has an interest in specified property in the*

3

> ***possession or custody of the person served.*** All property in which
> the judgment debtor or obligor is known or believed to have an
> interest then in and thereafter coming into the possession or
> custody of such a person, including any specified in the notice, and
> all debts of such a person, including any specified in the notice,
> then due and thereafter coming due to the judgment debtor or
> obligor, shall be subject to the notice except as set forth in
> subdivisions (h) and (i) of this section.

(Emphasis added.)  Since, at the time of service of the restraining notice, Warwick did not

owe a debt to Iran and was not in possession or custody of property in which Iran had an

interest, the notice is ineffective to impose any obligation on, or restrain, Warwick in any

way.  *See Nielsen Media Research, Inc. v. Carlton Hotel, LLC*, 5 A.D.3d 139, 139, 774

N.Y.S.2d 8, 8 (1st Dep't 2004) (holding "payments did not violate the restraining notice,

inasmuch as Carlton, at the time it was served, owed no 'debt' to Inman and was not in

possession of any money or property in which Inman had 'an interest' under CPLR

5222(b) and 105(i).").  Moreover,  the alleged "intangible asset" of a hotel room

reservation that is specified in the restraining notice (*see* **Exhibit 1** at page 4) is not

property or a debt that can be attached under Article 52 of the CPLR.

Second, and similarly, Warwick is not a garnishee.  CPLR 105(i) defines that term

as follows:

> (i) Garnishee. A "garnishee" is a person who owes a debt to
> a judgment debtor, or a person other than the judgment debtor who
> has property in his possession or custody in which a judgment
> debtor has an interest.

Warwick cannot be a garnishee because it neither owes a debt to Iran nor has possession of

property in which Iran has an interest.  Warwick is a hotel that is paid for the services it

provides.  Iran is a customer that has decided to purchase certain services from Warwick.

9934654v.1

Since Warwick is providing a service incident to Iran's travel, and being paid to do so, the payment received by Warwick is the property of Warwick, not Iran.

Third, under CPLR 5201 Warwick's hotel reservation is not property of, or a debt owed to, Iran.  Nothing even similar to a hotel reservation is included within the statutory language of CPLR 5201 describing debts and property subject to enforcement of a judgment.  Warwick is providing hotel lodging and services for a fee—that fee, when paid, belongs to Warwick, not Iran.  Warwick does not owe Iran a debt and is not in possession of any of its property.  A hotel reservation is just not a property right that may be attached or assigned. *Compare Verizon New England Inc. v. IDT Domestic Telecom, Inc.*, ____ N.Y.S.2d ____, 2012 WL 3792111 (1st Dep't Sept. 4, 2012) (holding that a purported garnishee's prepayment to the judgment debtor for services did not concern a "right to payment" that could be assigned "or that could be attached by" judgment creditors), **Exhibit 2**.

## POINT II

## THE HOTEL RESERVATION IS NOT A 'BLOCKED ASSET"

The restraining notice incorrectly asserts the hotel reservation is a "blocked asset" under Section 201(a) of the Terrorism Risk Act ("TRIA").  Warwick is simply a hotel being paid for the lodging and services it provides to Iran, and TRIA's definition of "blocked asset" is inapplicable.  Monetary consideration received by Warwick in exchange for lodging and services belongs to Warwick.  Since the money belongs to Warwick, it cannot be a "blocked asset" under the definition provided in § 201(d)(2) of TRIA.  The term "blocked asset" is defined as follows, in relevant part:

5

(2) BLOCKED ASSET.—The term "blocked asset" means—

(A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702); and

Public L. No. 107–297, 116 Stat 2322; *see Bank of NY v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007).  Under no reasonable interpretation could money paid to Warwick for hotel lodging and services be covered by the definition of a "blocked asset" under TRIA.  *Compare Bank of New York v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (holding assets in bank accounts did not fall within the definition of "blocked assets" under TRIA).  If the Second Circuit did not hold that bank accounts were "blocked assets," it is even less likely that the hotel reservation here could be found to be a "blocked asset."

Warwick's good faith receipt of payment from Iran for hotel services provided is outside of the scope of TRIA's "blocked asset" definition.  The restraining notice fails to state why TRIA might be applicable.  As will be explained in Point IV below, Iran's travel expenses fall outside the scope of § 1702 of the International Emergency Economic Powers Act.  *See* 50 U.S.C.A. § 1702(b)(4).

## POINT III

## PROPERTY OF A FOREIGN STATES ARE IMMUNE FROM ATTACHMENT AND EXECUTION

Warwick does not take any position on where Iran chooses to spend its money while visiting the United States.  While in the United States travelling, Iran is entitled to immunity.  Certainly, Iran is immune from having its money toward hotel expenses

6

becoming subject to collection for the purpose of satisfying a judgment.  Federal law

providing immunity states as follows:

> Subject to existing international agreements to which the United
> States is a party at the time of enactment of this Act the property in
> the United States of a foreign state shall be immune from
> attachment arrest and execution except as provided in sections
> 1610 and 1611 of this chapter.

28 U.S.C.A. § 1609.  The exceptions contained in the referenced sections appear to be

inapplicable.

The Seventh Circuit, in connection with other enforcement proceedings relating to

this same judgment registered in another district, recognized that § 1609 of the Foreign

Sovereign Immunities Act of 1976 ("FSIA") "provides that a foreign state's property in the

United States is immune from attachment unless a specific statutory exception to immunity

applies." *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 785 (7th Cir. 2011).  At

issue in *Rubin* was whether ancient artifacts allegedly owned by Iran that were housed

within museums in Chicago could be attached despite FSIA's immunity.  According to the

court, "§1609 of the FSIA codifies the common-law rule that property of a foreign state in

the United States is *presumed* immune from attachment and execution." *Id.* at 796.

Notably, 28 U.S.C. § 1610(g), which is cited within the restraining notice, does not

itself provide an exception to the sovereign immunity provided by 28 U.S.C. § 1609.

Accordingly, nothing in the restraining notice gives reason to believe that the hotel

reservation and the money paid to Warwick constitute property subject to attachment

despite federal law granting sovereign immunity.

7

## POINT IV

## THE EXECUTIVE ORDERS CITED IN THE RESTRAINING NOTICE ARE INAPPLICABLE

The restraining notice contains recitals in which Hersh alleges Warwick was involved in an illicit transaction with Iran and that the proceeds of this transaction are subject to attachment in satisfaction of Hersh's judgment against Iran.  Hersh argues that the proceeds Warwick received for the hotel reservation of the Iranian delegation is blocked pursuant to Executive Orders 12947 and 13224 as well as the International Emergency Economic Powers Act ("IEEPA").  Hersh is incorrect because IEEPA explicitly exempts travel expenses from being capable of attachment to satisfy a judgment, and the Executive Orders cited recognize that exemption.

Subject to a relevant exception, Section 1(b) of Executive Order 12947 provides:

> Any transaction or dealing by United States persons or within the United States in property or interests in property of the persons designated in or pursuant to this order is prohibited, including the making or receiving of any contribution of funds, goods, or services to or for the benefit of such persons.

Subject to the same relevant exception, Section 2(a) of Executive Order 13224 contains a nearly identical provision:

> Any transaction or dealing by United States persons or within the United States in property or interests in property blocked pursuant to this order is prohibited, including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of those persons listed in the Annex to this order or determined to be subject to this order.

Importantly, however, both section 1 of Executive Order 12947 and section 2 of Executive Order 13224 explicitly provide that § 203(b) of the IEEPA provides exception to those provisions of the Executive Orders.  (*See* Executive Order 12947, at Section 1, **Exhibit 3**;

8

Executive Order 13224, at Section 2, **Exhibit 4**.)  Section 203(b) of the IEEPA states, in
relevant part:

> (b) The authority granted to the President by this section does not
> include the authority to regulate or prohibit, directly or indirectly –
>
>   . . .
>
> > (4) *any transactions ordinarily incident to travel to or from any
> > country*, including importation of accompanied baggage for
> > personal use, maintenance within any country *including payment
> > of living expenses and acquisition of goods or services for
> > personal use*, and arrangement or facilitation of such travel
> > including nonscheduled air, sea, or land voyages." (emphasis
> > supplied)

50 U.S.C.A. § 1702(b)(4).  Iran is visiting New York as a guest of the United Nations.
While in New York, Iran naturally must spend money on basic necessities such as food
and lodging.  These necessities are unquestionably "transactions ordinarily incident to
travel to or from any country" and, therefore, immune from Presidential regulation or
prohibition, rendering the Executive Orders cited by Hersh inapplicable.  There is nothing
illegal or illicit about Warwick providing hotel lodging and services to Iran.


## POINT V

### THERE DOES NOT APPEAR TO BE SUBJECT MATTER JURISDICTION

Warwick was not a party to the action giving rise to the judgment for which
enforcement is sought, and is not liable for that judgment.  As such, an independent basis
of jurisdiction would have to be established in order for any proceeding in this Court to
compel Warwick to do anything.  This Court does not have subject matter jurisdiction over
Warwick in connection with enforcement of the judgment.

It is believed that Hersh is living in Israel.  "Diversity jurisdiction generally does not lie when a party is a United States citizen domiciled abroad."  *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 645n.3 (S.D.N.Y. 2007).  Since there is not any jurisdiction over Warwick, the restraining notice (served with a caption naming this Court) is a presumptive nullity that should be dissolved by this Court.


## CONCLUSION

Based upon the Court's inherent powers to dissolve and nullify any restraining notice served under its authority, including the power granted by the state procedure in New York CPLR 5240, it is respectfully requested that the restraining notice be quashed, dissolved, and nullified by this Court.


Date: September 19, 2012                Respectfully submitted,

By:
                                        Andrew I. Hamelsky, Esq.
                                        White and Williams LLP
                                        One Penn Plaza
                                        250 W. 34th Street, Suite 4110
                                        New York, NY 10119
                                        Phone: 212-244-9500
                                        E-mail: hamelskya@whiteandwilliams.com
                                        *Attorneys for Garnishee, Warwick New York Hotel*

10

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

STUART E. HERSH,

                Plaintiff / Judgment-
                Creditor,

        -against-

ISLAMIC REPUBLIC OF IRAN,

                Defendant / Judgment-
                Debtor

        -and-

WARWICK NEW YORK HOTEL

                Garnishee.

------------------------------------------------------------------------X

Docket No:
12-mc-153

**RESTRAINING NOTICE
PURSUANT TO CPLR
§ 5222(b) AND FRCP 69(a)**

TO:  **WARWICK NEW YORK HOTEL
65 West 54th Street
New York, New York 10019**

        WHEREAS Petitioner Hersh was severely injured in a September 4, 1997 bombing at the Ben Yehuda pedestrian mall in Jerusalem, Israel, in a bombing carried out by Hamas with the support and training of the Islamic Republic of Iran; and

        WHEREAS the bomb mentioned in the prior paragraph was packed with nails, screws, pieces of glass, and chemical poisons in order to maximize pain, suffering, and death; and

WHEREAS following the bombing, Petitioner Hersh suffered numerous severe shrapnel wounds, has attempted to commit suicide, has post traumatic stress disorder, suffers from nightmares and other psychological and/or social problems, lost 60 percent of his hearing, has a speech impediment, has difficulty walking, and has tinnitus, back pain, chronic ear infections, and burn scars; and

WHEREAS Petitioner Hersh received from the federal district court for the District of Columbia a judgment in the amount of $12 million in damages, plus interest, against several defendants, including the Islamic Republic of Iran ("Iran"), jointly and severally, on September 10, 2003 (hereinafter "Judgment"); and

WHEREAS the other defendants against whom the Judgment was entered, jointly and severally, are the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani, and Ali Fallahian-Khuzestani; and

WHEREAS the Judgment remains unsatisfied and Iran still owes Petitioner Hersh $12 million, plus interest; and

WHEREAS § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides that when a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, the blocked assets of the terrorist party judgment debtor, and the blocked assets of any agency or instrumentality of the terrorist party judgment debtor, shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party judgment debtor has been adjudged liable; and

WHEREAS 28 U.S.C. § 1610(g) provides that when a person has obtained a qualified judgment against a state sponsor of terrorism, the assets of the state sponsor of

terrorism and the assets of any agency or instrumentality of the state sponsor of terrorism, shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party judgment debtor has been adjudged liable; and

WHEREAS the Judgment was given on a claim based upon an "act of terrorism" as defined by TRIA and judgment debtor Iran is a "terrorist party" as defined by TRIA; and

WHEREAS the Judgment was against Iran, a state sponsor of terrorism; and

WHEREAS the WARWICK NEW YORK HOTEL has done, is doing, or is planning to do business with Iran by accepting money from Iran and/or its president, Mahmoud Ahmadinejad, in exchange for a hotel room and related services; and

WHEREAS the business that the Iranian president has done and/or seeks to do with the WARWICK NEW YORK HOTEL is not official United Nations business or in the direct aid of official United Nations business and thus not protected by agreements between the United States and the United Nations; and

WHEREAS the WARWICK NEW YORK HOTEL is prohibited from doing such business with Iran; and

WHEREAS the proceeds of the illicit transaction that the Warwick has completed and/or seeks to complete with Iran, by and through its president and his assistants, and the hotel room itself, are blocked pursuant to Executive Orders 12947 and 13224 and §§ 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702) and are thus "blocked assets" as defined by TRIA; and

WHEREAS, pursuant to TRIA, all blocked assets of Iran in the United States are therefore subject to execution and attachment in aid of execution in satisfaction of the Judgment; and

WHEREAS, pursuant to 28 U.S.C. § 1610(g), all assets of Iran in the United States are therefore subject to execution and attachment in aid of execution in satisfaction of the Judgment; and

WHEREAS, it appears that WARWICK NEW YORK HOTEL is either currently in the possession of blocked assets of Iran or will soon be in possession of blocked assets of Iran and/or assets in which Iran holds an interest; and

WHEREAS, WARWICK NEW YORK HOTEL currently holds, in the name of Iran, Mahmoud Ahmadinejad and/or his assistants, an intangible asset, being a reservation of a room or rooms at the WARWICK NEW YORK HOTEL and a license to occupy same:

TAKE NOTICE that pursuant to § 5222(b) of the New York Civil Practice Law and Rules, which is set forth in full below in Schedule A (and is applicable pursuant to Rule 69(a) of the Federal Rules of Civil Procedure), and to § 201 of Title II of the Terrorism Risk Insurance Act of 2002, and to 28 U.S.C. § 1610(g), the WARWICK NEW YORK HOTEL is hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property or pay over or otherwise dispose of any such asset of Iran or any such property in which Iran has an interest (whether tangible or intangible), except as therein provided.

TAKE FURTHER NOTICE that this notice also covers all property in which Iran has an interest (whether tangible or intangible), hereafter coming into your possession or custody, and all debts hereafter coming due to you from Iran.

SPECIFICALLY, this notice covers any funds received by Iran, its agents, servants, or employees, including Mahmoud Ahmadinijad, as well as the right to any room(s) reserved by them.

TAKE FURTHER NOTICE that disobedience of this Restraining Notice is punishable as a contempt of court, and could subject the WARWICK NEW YORK HOTEL to liability for any assets wrongfully released.

Dated:   Brooklyn, New York
         September 13, 2012

Yours,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiff / Judgment-Creditor*

by: _____
     Robert J. Tolchin
     Meir Katz

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

NITSANA DARSHAN LEITNER, ADV.
*Israeli Counsel for Plaintiff / Judgment-Creditor*
10 Hata'as Street
Ramat Gan, Israel
011-972-3-751-4175

**SCHEDULE A**

**Section 5222(b) of the New York Civil Practice Law and Rules**

(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

# EXHIBIT
# 2



--- N.Y.S.2d ----, 2012 WL 3792111 (N.Y.A.D. 1 Dept.), 2012 N.Y. Slip Op. 06097
**(Cite as: 2012 WL 3792111 (N.Y.A.D. 1 Dept.))**

Supreme Court, Appellate Division, First Department,
New York.
VERIZON NEW ENGLAND INC., Petition-
er–Appellant,
v.
IDT DOMESTIC TELECOM, INC., Respond-
ent–Respondent.

Sept. 4, 2012.

**Background:** Judgment creditor filed petition to en-
force restraining notice against third party on monies
paid by third party to judgment debtor. The Supreme
Court, New York County, O. Peter Sherwood, J.,
dismissed petition, and judgment creditor appealed.

**Holding:** The Supreme Court, Appellate Division,
held that third party did not have any property be-
longing to judgment debtor as result of its ongoing
business relationship with judgment debtor at time it
received restraining notice.
Affirmed.

West Headnotes

**Attachment 44 57**

44 Attachment
   44II Property Subject to Attachment
      44k57 k. Interests Under Contracts. Most Cited
Cases

**Execution 161 390**

161 Execution
   161XIV Supplementary Proceedings
      161k390 k. Injunction Restraining Disposition
of Property. Most Cited Cases

**Garnishment 189 33**

189 Garnishment
   189II Persons and Property Subject to Garnish-
ment

189k33 k. Interests Under Contracts in Gen-
eral; Wages. Most Cited Cases

Long distance service provider did not have any
property belonging to telecommunications vendor as
result of its ongoing business relationship with vendor
at time it received restraining notice from judgment
creditor of vendor, and thus provider's payments to
vendor were not subject to levy by judgment creditor,
even if vendor did not cash provider's check for eight
days, where provider made pre-payments to vendor
for telecommunications services needed during fol-
lowing month, no written contract existed between
parties, provider had no obligation to buy services
from vendor, and either party could terminate their
relationship at any time without notice. McKinney's
CPLR 5201, 5222(b).

Gibson, Dunn & Crutcher LLP, New York (Robert L.
Weigel of counsel), for appellant.

Mishcon De Reya, LLP, New York (James J. McGuire
and Mark A. Berube of counsel), for respondent.

SAXE, J.P., CATTERSON, MOSKOWITZ,
ACOSTA, RENWICK, JJ.

**\*1** Order and judgment (one paper), Supreme
Court, New York County (O. Peter Sherwood, J.),
entered September 24, 2010, which dismissed the
petition seeking, inter alia, that respondent be directed
to turn over to petitioner all monies respondent paid to
Global Naps Networks, Inc. after April 2, 2009,
unanimously affirmed, without costs.

In this proceeding, judgment creditor Verizon
New England Inc., seeks to enforce a restraining no-
tice against a third party, IDT Domestic Telecom, Inc.
pursuant to Article 52 of the CPLR, on monies paid by
IDT to judgment debtor, Global, a telecommunica-
tions vendor. IDT purchased voice-over-Internet ter-
mination services for its customers from Global.

On January 29, 2009, a judgment was entered in
Massachusetts in favor of Verizon against Global in
the sum of $57,716,714. The judgment was domesti-
cated in New York on March 6, 2009. Verizon sought

--- N.Y.S.2d ----, 2012 WL 3792111 (N.Y.A.D. 1 Dept.), 2012 N.Y. Slip Op. 06097
**(Cite as: 2012 WL 3792111 (N.Y.A.D. 1 Dept.))**

to enforce its judgment by serving a restraining notice and information subpoena upon Global and its business partners, including IDT, which makes pre-payments to Global for telecommunications services needed the following month. No written contract existed between IDT and Global, and either party could terminate their "at will" relationship at any time without notice. Verizon alleged that documentation provided by IDT established that as of service of the restraining notice and through November 2009, $992,000 had been improperly paid to Global, as these sums were subject to restraint under the restraining notice.

At issue in this turnover proceeding is whether payments made by respondent IDT to the judgment debtor Global constitute debt or property within the meaning of CPLR 5201 and, therefore, are subject to levy by petitioner/judgment creditor Verizon. Verizon's contention that IDT's ongoing business relationship with Global meant that IDT had property of Global in its possession at the time it received the restraining notice is unavailing. At best, this was a month-to-month agreement with prepaid services. This Court recently held in *Verizon New England Inc. v. Transcom Enhanced Servs., Inc.,* —— A.D.3d ——, 948 N.Y.S.2d 245 [2012] that a similar prepaid arrangement entered into between Verizon and a different vendor was not attachable property pursuant to CPLR 5201.

In *Transcom,* Verizon, the judgment creditor, sought to enforce a restraining notice against a third party pursuant to article 52 of the CPLR, on monies paid by Transcom to judgment debtor, Global. Like IDT here, Transcom purchased voice-over-Internet termination services for its customers from Global. Transcom ordered telecommunications services from Verizon on a weekly basis by weekly prepayment.

In *Transcom, supra,* this Court rejected Verizon's argument and found that the agreement between Global and Transcom dispensed with any contractual obligations or "bundle of rights" that could be considered attachable property. This Court reasoned that Global did not have any rights under the prepayment because "there is simply no obligation for Transcom to purchase services from [Global]." Rather, "[t]his ... was a situation where [Global's] performance depended on Transcom's prepayment for services in any given week" and "therefore involved intangibles that

may never ripen into a significant property right as where they depend on a contingency that may never occur" (*Transcom,* at 250). Thus, Global had no right to payment that it could assign or that could be attached by its judgment creditors.

**\*2** In this case, the prepayment arrangement between Verizon and IDT is indistinguishable from the prepayment arrangement in *Transcom* that this Court found was not subject to attachment. The arrangement was a month-to-month agreement with prepaid services. Like Transcom, IDT had no continuing obligation or commitment to purchase the services offered by Global. Global did not have any rights under the prepayment because "there [was] simply no obligation for [IDT] to purchase services from [Global]" (*id.*). Thus, "Global had no right to payment that it could assign or that could be attached by its judgment creditors" (*id.*). In light of this economic reality, there is no property pursuant to CPLR 5201(b) or debt pursuant to CPLR 5201(a) that would be subject to a restraining notice under CPLR 5222(b).

Equally unavailing is Verizon's argument that IDT possessed a restrainable debt owed to Global on April 2, 2009, when it was served with the restraining notice, as Global did not cash IDT's prepayment for April 2009 services, mailed overnight on March 27, 2009, until April 8, 2009 (*see* UCC 3–409[1] ). IDT owed no debt to Global and Global had no property interest in any prepayment until it fulfilled its obligations and provided a month of telecommunications services to IDT (*cf. Conde v. Anton Adj. Co.,* 133 Misc.2d 998, 508 N.Y.S.2d 884 [1986] ). That Global did not cash the check for eight days does not alter the fundamental contingent, prepayment nature of the parties' relationship.

In view of the foregoing, we need not address whether Verizon was entitled to CPLR article 52 enforcement proceedings.

N.Y.A.D. 1 Dept.,2012.
Verizon New England Inc. v. IDT Domestic Telecom, Inc.
--- N.Y.S.2d ----, 2012 WL 3792111 (N.Y.A.D. 1 Dept.), 2012 N.Y. Slip Op. 06097

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- N.Y.S.2d ----, 2012 WL 3792111 (N.Y.A.D. 1 Dept.), 2012 N.Y. Slip Op. 06097
**(Cite as: 2012 WL 3792111 (N.Y.A.D. 1 Dept.))**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 3

Westlaw.

Exec. Order No. 12947, 60 FR 5079, 1995 WL 25760 (Pres.Exec.Order)                                      Page 1



Executive Order 12947

Prohibiting Transactions With Terrorists Who Threaten To Disrupt the Middle East Peace Process

January 23, 1995

**\*5079** By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (IEEPA), the National Emergencies Act (50 U.S.C. 1601*et seq* .), and section 301 of title 3, United States Code,

I, WILLIAM J. CLINTON, President of the United States of America, find that grave acts of violence committed by foreign terrorists that disrupt the Middle East peace process constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and hereby declare a national emergency to deal with that threat.

I hereby order:

**Section 1.** Except to the extent provided in section 203(b)(3) and (4) of IEEPA (50 U.S.C. 1702(b)(3) and (4)) and in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date: (a) all property and interests in property of:
(i) the persons listed in the Annex to this order;

(ii) foreign persons designated by the Secretary of State, in coordination with the Secretary of the Treasury and the Attorney General, because they are found:

(A) to have committed, or to pose a significant risk of committing, acts of violence that have the purpose or effect of disrupting the Middle East peace process, or

(B) to assist in, sponsor, or provide financial, material, or technological support for, or services in support of, such acts of violence; and

(iii) persons determined by the Secretary of the Treasury, in coordination with the Secretary of State and the Attorney General, to be owned or controlled by, or to act for or on behalf of, any of the foregoing persons, that are in the United States, that hereafter come within the United States, or that hereafter come within the possession or control of United States persons, are blocked;

(b) any transaction or dealing by United States persons or within the United States in property or interests in property of the persons designated in or pursuant to this order is prohibited, including the making or receiving of any contribution of funds, goods, or services to or for the benefit of such persons;

(c) any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in this order, is prohibited.

**Sec. 2.** For the purposes of this order: (a) the term "person" means an individual or entity;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exec. Order No. 12947, 60 FR 5079, 1995 WL 29760 (Pres.Exec.Order)    Page 2

Case 1:12-mc-00153-P1   Document 5   Filed 09/19/12   Page 30 of 37

(b) the term "entity" means a partnership, association, corporation, or other organization, group, or subgroup;

**\*5080** (c) the term "United States person" means any United States citizen, permanent resident alien, entity organized under the laws of the United States (including foreign branches), or any person in the United States; and

(d) the term "foreign person" means any citizen or national of a foreign state (including any such individual who is also a citizen or national of the United States) or any entity not organized solely under the laws of the United States or existing solely in the United States, but does not include a foreign state.

**Sec. 3.** I hereby determine that the making of donations of the type specified in section 203(b)(2)(A) of IEEPA ( 50 U.S.C. 1702(b)(2)(A)) by United States persons to persons designated in or pursuant to this order would seriously impair my ability to deal with the national emergency declared in this order, and hereby prohibit such donations as provided by section 1 of this order.

**Sec. 4.** (a) The Secretary of the Treasury, in consultation with the Secretary of State and, as appropriate, the Attorney General, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to me by IEEPA as may be necessary to carry out the purposes of this order. The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government. All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order.
(b) Any investigation emanating from a possible violation of this order, or of any license, order, or regulation issued pursuant to this order, shall first be coordinated with the Federal Bureau of Investigation (FBI), and any matter involving evidence of a criminal violation shall be referred to the FBI for further investigation. The FBI shall timely notify the Department of the Treasury of any action it takes on such referrals.

**Sec. 5.** Nothing contained in this order shall create any right or benefit, substantive or procedural, enforceable by any party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

**Sec. 6.** (a) This order is effective at 12:01 a.m., eastern standard time on January 24, 1995.
(b) This order shall be transmitted to the Congress and published in the **Federal Register**.

WILLIAM J. CLINTON

THE WHITE HOUSE,
January 23, 1995.
**\*5081** ANNEX

TERRORIST ORGANIZATIONS WHICH THREATEN TO DISRUPT THE MIDDLE EAST PEACE PROCESS

Abu Nidal Organization (ANO)

Democratic Front for the Liberation of Palestine (DFLP)

Hizballah

Islamic Gama'at (IG)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:12-mc-00153-P1  Document 5  Filed 09/19/12  Page 31 of 37

Islamic Resistance Movement (HAMAS)

Jihad

Kach

Kahane Chai

Palestinian Islamic Jihad-Shiqaqi faction (PIJ)

Palestine Liberation Front-Abu Abbas faction (PLF-Abu Abbas)

Popular Front for the Liberation of Palestine (PFLP)

Popular Front for the Liberation of Palestine-General Command (PFLP-GC)

Exec. Order No. 12947, 60 FR 5079, 1995 WL 25760 (Pres.Exec.Order)
END OF DOCUMENT

# EXHIBIT
# 4



Executive Order 13224

Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten To Commit, or Support Terrorism

September 23, 2001

**\*49079** By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq* .)(IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq*.), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. 287c) (UNPA), and section 301 of title 3, United States Code, and in view of United Nations Security Council Resolution (UNSCR) 1214 of December 8, 1998, UNSCR 1267 of October 15, 1999, UNSCR 1333 of December 19, 2000, and the multilateral sanctions contained therein, and UNSCR 1363 of July 30, 2001, establishing a mechanism to monitor the implementation of UNSCR 1333,

I, GEORGE W. BUSH, President of the United States of America, find that grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the terrorist attacks in New York, Pennsylvania, and the Pentagon committed on September 11, 2001, acts recognized and condemned in UNSCR 1368 of September 12, 2001, and UNSCR 1269 of October 19, 1999, and the continuing and immediate threat of further attacks on United States nationals or the United States constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and in furtherance of my proclamation of September 14, 2001, Declaration of National Emergency by Reason of Certain Terrorist Attacks, hereby declare a national emergency to deal with that threat. I also find that because of the pervasiveness and expansiveness of the financial foundation of foreign terrorists, financial sanctions may be appropriate for those foreign persons that support or otherwise associate with these foreign terrorists. I also find that a need exists for further consultation and cooperation with, and sharing of information by, United States and foreign financial institutions as an additional tool to enable the United States to combat the financing of terrorism.

I hereby order:

**Section 1.** Except to the extent required by section 203(b) of IEEPA (50 U.S.C. 1702(b)), or provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order, all property and interests in property of the following persons that are in the United States or that hereafter come within the United States, or that hereafter come within the possession or control of United States persons are blocked:
(a) foreign persons listed in the Annex to this order;

(b) foreign persons determined by the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States;

(c) persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, to be owned or controlled by, or to act for or on behalf of those persons listed in the Annex to this order or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of this order; **\*49080**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:12-mc-00153-P1   Document 5   Filed 09/19/12   Page 34 of 37

(d) except as provided in section 5 of this order and after such consultation, if any, with foreign authorities as the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, deems appropriate in the exercise of his discretion, persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General;

(i) to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex to this order or determined to be subject to this order; or

(ii) to be otherwise associated with those persons listed in the Annex to this order or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of this order.

**Sec. 2.** Except to the extent required by section 203(b) of IEEPA (50 U.S.C. 1702(b)), or provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date:

(a) any transaction or dealing by United States persons or within the United States in property or interests in property blocked pursuant to this order is prohibited, including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of those persons listed in the Annex to this order or determined to be subject to this order;

(b) any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in this order is prohibited; and

(c) any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited.


**Sec. 3.** For purposes of this order:

(a) the term "person" means an individual or entity;

(b) the term "entity" means a partnership, association, corporation, or other organization, group, or subgroup;

(c) the term "United States person" means any United States citizen, permanent resident alien, entity organized under the laws of the United States (including foreign branches), or any person in the United States; and

(d) the term "terrorism" means an activity that—


(i) involves a violent act or an act dangerous to human life, property, or infrastructure; and

(ii) appears to be intended—
(A) to intimidate or coerce a civilian population;

(B) to influence the policy of a government by intimidation or coercion; or

(C) to affect the conduct of a government by mass destruction, assassination, kidnapping, or hostage-taking.


**Sec. 4.** I hereby determine that the making of donations of the type specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)) by United States persons to persons determined to be subject to this order would seriously

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

impair my ability to deal with the national emergency declared in this order, and would endanger Armed Forces of the United States that are in a situation where imminent involvement in hostilities is clearly indicated by the circumstances, and hereby prohibit such donations as provided by section 1 of this order. Furthermore, I hereby determine that the Trade Sanctions Reform and Export Enhancement Act of 2000 (title IX, Public Law 106-387) shall not affect the imposition or the continuation of the imposition of any unilateral agricultural sanction or unilateral medical sanction on **\*49081** any person determined to be subject to this order because imminent involvement of the Armed Forces of the United States in hostilities is clearly indicated by the circumstances.

**Sec. 5.** With respect to those persons designated pursuant to subsection 1(d) of this order, the Secretary of the Treasury, in the exercise of his discretion and in consultation with the Secretary of State and the Attorney General, may take such other actions than the complete blocking of property or interests in property as the President is authorized to take under IEEPA and UNPA if the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, deems such other actions to be consistent with the national interests of the United States, considering such factors as he deems appropriate.

**Sec. 6.** The Secretary of State, the Secretary of the Treasury, and other appropriate agencies shall make all relevant efforts to cooperate and coordinate with other countries, including through technical assistance, as well as bilateral and multilateral agreements and arrangements, to achieve the objectives of this order, including the prevention and suppression of acts of terrorism, the denial of financing and financial services to terrorists and terrorist organizations, and the sharing of intelligence about funding activities in support of terrorism.

**Sec. 7.** The Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA and UNPA as may be necessary to carry out the purposes of this order. The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government. All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order.

**Sec. 8.** Nothing in this order is intended to affect the continued effectiveness of any rules, regulations, orders, licenses, or other forms of administrative action issued, taken, or continued in effect heretofore or hereafter under 31 C.F.R. chapter V, except as expressly terminated, modified, or suspended by or pursuant to this order.

**Sec. 9.** Nothing contained in this order is intended to create, nor does it create, any right, benefit, or privilege, substantive or procedural, enforceable at law by a party against the United States, its agencies, officers, employees or any other person.

**Sec. 10.** For those persons listed in the Annex to this order or determined to be subject to this order who might have a constitutional presence in the United States, I find that because of the ability to transfer funds or assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render these measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in this order, there need be no prior notice of a listing or determination made pursuant to this order.

**Sec. 11.** (a) This order is effective at 12:01 a.m. eastern daylight time on September 24, 2001. **\*49082**
(b) This order shall be transmitted to the Congress and published in the **Federal Register**.

GEORGE W. BUSH

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:12-mc-00153-P1   Document 5   Filed 09/19/12   Page 36 of 37

THE WHITE HOUSE,
September 23, 2001.
ANNEX

Al Qaida/Islamic Army

Abu Sayyaf Group

Armed Islamic Group (GIA)

Harakat ul-Mujahidin (HUM)

Al-Jihad (Egyptian Islamic Jihad)

Islamic Movement of Uzbekistan (IMU)

Asbat al-Ansar

Salafist Group for Call and Combat (GSPC)

Libyan Islamic Fighting Group

Al-Itihaad al-Islamiya (AIAI)

Islamic Army of Aden

Usama bin Laden

Muhammad Atif (aka, Subhi Abu Sitta, Abu Hafs Al Masri)

Sayf al-Adl

Shaykh Sai'id (aka, Mustafa Muhammad Ahmad)

Abu Hafs the Mauritanian (aka, Mahfouz Ould al-Walid, Khalid Al-Shanqiti)

Ibn Al-Shaykh al-Libi

Abu Zubaydah (aka, Zayn al-Abidin Muhammad Husayn, Tariq)

Abd al-Hadi al-Iraqi (aka, Abu Abdallah)

Ayman al-Zawahiri

Thirwat Salah Shihata

Tariq Anwar al-Sayyid Ahmad (aka, Fathi, Amr al-Fatih)

Muhammad Salah (aka, Nasr Fahmi Nasr Hasanayn)

Makhtab Al-Khidamat/Al Kifah

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Wafa Humanitarian Organization

Al Rashid Trust

Mamoun Darkazanli Import-Export Company

Exec. Order No. 13224, 66 FR 49079, 2001 WL 1126562 (Pres.Exec.Order)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.